**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2011

Lyle W. Cayce
Clerk

No. 10-30772

LIBERTY BANK & TRUST COMPANY,

Plaintiff-Appellee,

v.

GULF COAST BANK & TRUST COMPANY, INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-4316

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Gulf Coast Bank and Trust Company (Gulf Coast) appeals from an order granting summary judgment to Plaintiff-Appellee Liberty Bank and Trust Company (Liberty Bank), which was formerly United Bank and Trust Company (United Bank).[1] During August 2005, Hurricane Katrina caused

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

[1] United Bank was the original plaintiff in this action. On April 2, 2009, United Bank merged with Liberty Bank and Liberty Bank became the plaintiff. Because United Bank was the entity involved at all relevant times during this dispute, we refer to Plaintiff-Appellee as United Bank throughout this opinion.

No. 10-30772

extensive flood damage to United Bank's corporate office in New Orleans. Less than two months later, on October 19, United Bank sent a "cash letter"—essentially a deposit—for $121,748.46 to the Federal Reserve through Fiserv Solutions, Inc., a data processing company. The amount was mistakenly credited, however, to Gulf Coast, not to United Bank. Two days later, the Federal Reserve notified Gulf Coast that it had received an "extra bundle" in the amount of $121,748.46. Rather than return the amount, Gulf Coast used it to reconcile its books because, it alleges, the Federal Reserve owed it approximately $127,000. In 2008, shortly after restoring its accounting department after recovering from Hurricane Katrina, United Bank conducted an internal audit during which it discovered the missing credit for the October 19, 2005 cash letter. United Bank then notified the Federal Reserve of the missing credit. On August 29, 2008, United Bank filed suit against the Federal Reserve and United Bank's insurer, The Kansas Bankers Surety Company. After learning from the Federal Reserve in March 2009 that Gulf Coast had received its money, United Bank asked Gulf Coast to return it. Gulf Coast refused, and United Bank amended its complaint to add Gulf Coast and Fiserv as defendants in this action.[2] On July 16, 2010, the district court granted summary judgment to United Bank on its conversion claim against Gulf Coast. We AFFIRM.

We review the district court's ruling on a motion for summary judgment *de novo*, applying the same legal standard as the district court. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "review the evidence and any inferences therefrom in the light most favorable to the nonmoving party." *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

---

[2] This appeal only involves United Bank's claim against Gulf Coast for conversion.

No. 10-30772

Gulf Coast's principal contention on appeal is that it cannot be liable for conversion under Louisiana law. Specifically, Gulf Coast argues that: (1) an improperly credited cash letter cannot be the basis of the tort of conversion in Louisiana; and (2) United Bank's only potential recourse is against the Federal Reserve, not Gulf Coast. Each of these arguments is incorrect under Louisiana law. With respect to the first—for which Gulf Coast cites no authority—"[Louisiana] courts have uniformly considered actions against banks for wrongful transfer or disposition of account funds as conversion actions." *Sanderson v. First Nat'l Bank of Commerce*, 723 So. 2d 1036, 1038 (La. App. 1998) (collecting cases).

Although somewhat confusing, Gulf Coast's second argument seems to be that United Bank's conversion claim against Gulf Coast can only arise under Louisiana Revised Statute § 10:3-420, which governs actions for the conversion of negotiable instruments. Gulf Coast asserts that this statutory section may plausibly allow a claim against the Federal Reserve, but not Gulf Coast, because Gulf Coast and United Bank never had a banking relationship. This argument is flawed because it improperly assumes that § 10:3-420 is the only possible basis for conversion liability for Gulf Coast. But this is not so. As the district court apparently took for granted—and rightly so—United Bank has a claim against Gulf Coast under general Louisiana law conversion principles. *See, e.g., Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 721 So. 2d 853, 857 (La. 1998). Moreover, it is immaterial that Gulf Coast did not initially obtain possession of United Bank's credit by committing a wrongful act. As the district court correctly observed, "[a]lthough a party may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion."

Gulf Coast also argues, in the alternative, that even if the district court's finding of liability is upheld, the district court erred by not allocating fault

3

No. 10-30772

between Gulf Coast, United Bank, Fiserv, and the Federal Reserve. Gulf Coast's argument presupposes that the Federal Reserve and Fiserv were negligent in applying the credit to Gulf Coast's account, and that United Bank was negligent in not sooner discovering the missing credit on its books. Gulf Coast does not point to any evidence to support this argument, and thus the district court would not have been required to consider the question of comparative fault on summary judgment. Even assuming *arguendo*, however, that Gulf Coast could prove the negligence of another party, its plea for an allocation of fault fails as a matter of law. Because Gulf Coast is liable for conversion, an intentional tort, Louisiana law plainly forecloses an allocation of fault between Gulf Coast and United Bank: "[I]f a person suffers . . . loss as a result partly of his own negligence *and partly as a result of the fault of an intentional tortfeasor*, his claim for recovery of damages shall not be reduced." La. Civ. Code art. 2323(C) (emphasis added). Although this provision would be inapplicable were a third party, such as Fiserv or the Federal Reserve, to be found negligent,[3] Gulf Coast still would not be entitled to an allocation of fault because any negligence by Fiserv or the Federal Reserve would not be the legal cause of United Bank's injury.

Under Louisiana law, Gulf Coast's conversion is an intervening cause that would cut off any liability on the part of Fiserv or the Federal Reserve. The

---

[3] Louisiana law is silent about how to treat cases involving both intentional and negligent tortfeasors. Article 2324(B) of the Louisiana Civil Code broadly states that "[a] joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of [the] other person," but this rule does not apply to joint intentional tortfeasors, who remain liable *in solido*. La. Civ. Code art. 2324(A). This ambiguity has led the author of one civil law treatise to observe that "[t]he legal relationship of the separate intentional and negligent tortfeasors who both are a cause of harm to the plaintiff has created a rapidly growing and very serious brier patch . . . [because] the degree of culpability of an intentional wrongdoer is so disparate from that of a negligent wrongdoer that the two will not mix." William E. Crawford, 12 Louisiana Civil Law Treatise: Tort Law § 21:12 (2d ed. 2010).

No. 10-30772

Second Restatement of Torts, to which the Louisiana Supreme Court has repeatedly turned when determining whether an intervening cause relieves liability, *see, e.g., Adams v. Rhodia, Inc.*, 983 So. 2d 798, 808 (La. 2008); *Olsen v. Shell Oil Co.*, 365 So. 2d 1285, 1293 n.15 (La. 1978); *Laird v. Travelers Insurance Co.*, 267 So. 2d 714, 719 n.1 (La. 1972), provides that a third-party intentional tort "is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort . . . , unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit" the intentional tort.  Restatement (Second) of Torts § 448 (1965).  Nothing in the summary judgment record demonstrates that it was foreseeable to Fiserv or the Federal Reserve that another legitimate bank would avail itself of the opportunity to convert the credit and refuse to return it to its rightful owner.

Gulf Coast also argues that the district court erred by failing to offset the amount United Bank received in settlements from Gulf Coast's co-defendants against Gulf Coast's liability.  Gulf Coast cites no evidence or authority to support this argument, and we will not consider it.[4]

The judgment of the district court is AFFIRMED.

---

[4] Plaintiff also asserts, for the first time on appeal, that United Bank's claim is prescribed by its failure to file the case within the one-year prescriptive period for conversion claims under Louisiana law.  *See* La. Civ. Code art. 3492.  Gulf Coast has waived this defense because it failed to raise it below.  *See Spotts v. United States*, 613 F.3d 559, 569-70 (5th Cir. 2010) (arguments "not raised before the district court are waived and cannot be raised for the first time on appeal") (citation and internal quotation marks omitted).