**ROBERT JUAN DARTEZ, LLC, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 3:11–CV–0602–N.**

United States District Court, N.D. Texas, Dallas Division.

Nov. 14, 2011.

Edward Gonzales, Law Office of Edward J. Gonzales, III, Baton Rouge, LA, for Plaintiffs.

Jeffrey Paul Ehrlich and Philip Davis MacWilliams, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER

DAVID C. GODBEY, District Judge.

This Order addresses Defendant the United States of America's (the "Government") motion to dismiss [10]. Because the Plaintiffs' complained-of actions fall within the Federal Tort Claims Act's [1] (the "FTCA" and the "Act") discretionary function exception (the "Exception"),[2] the Court grants the motion and dismisses this case without prejudice.[3]

1. 28 U.S.C. §§ 1346(b), 2671 *et seq.*

2. 28 U.S.C. § 2680(a).

## I. ORIGINS OF THE PLAINTIFFS' FTCA ACTION

This action relates to the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (the "Stanford Defendants"). *See SEC v. Stanford Int'l Bank, Ltd.,* Civil Action No. 3:09–CV–0298–N, 2009 WL 2371432 (N.D. Tex. Apr. 17, 2009). The Stanford Defendants allegedly swindled billions of dollars from investors, such as the Plaintiffs, through an elaborate and international Ponzi scheme. As part of that litigation, this Court appointed a receiver. The Stanford Defendants' alleged victims may pursue recovery through a variety of avenues including the Receivership's administrative claims process and satellite litigation against third parties.

This action represents the latter approach. The Plaintiffs have sued the Government to collect approximately $18.7 million in damages "correspond[ing] to [their] [Stanford International Bank ("SIB")] accounts now deemed worthless" as well as "damages for loss of their opportunities to earn on their investments" in the form of "interest those accounts would have earned since" the Receivership's inception. Compl. at 28[1]. The Plaintiffs seek recovery under three claims: intentional tort, negligent supervision, and negligence.

In short, the Plaintiffs base their claims on certain alleged "omissions, misconduct, and breaches of duty" by a former SEC regional enforcement director, Spencer Barasch, and "other inexcusable acts of negligence by [other] SEC employees." *Id.* at 1. According to the Plaintiffs: Barasch ensured that the appropriate SEC

3. The Court therefore denies as moot the Plaintiffs' request to file a sur-reply [18].

enforcement officials made "no meaningful effort" to investigate the Stanford Defendants, despite receiving reports as early as 1997 "that [they] were likely operating a Ponzi scheme." *Id.* at 5 (internal quotation marks, emphasis, and citations omitted). Barasch's alleged unethical conduct stemmed from purported conflicts of interest with the Stanford Defendants. Indeed, Barasch went to work for the Stanford enterprises in 2005, only a few months after leaving the SEC. The Plaintiffs also blame their injuries on "[t]he failure of Barasch's superiors to properly review and supervise his conduct," *id.* at 26, and of the SEC generally to mount a proper and competent "overall response to the Stanford Ponzi scheme." *Id.* at 27. The Plaintiffs believe that the SEC could have taken a number of actions to stop the Stanford Defendants, including "commenc[ing] an action under Section 206 of the Investment Advisors Act, and ... identify[ing] the Stanford 'certificates of deposit' as securities" under relevant federal securities laws. *Id.*

The Government now moves to dismiss under Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction over this action because it runs afoul of the Exception. The Government contends that the Plaintiffs' ethics- and competency-related complaints dress up what is, at core, an action seeking to litigate the SEC's discretionary investigative and regulatory authority. The Court agrees.

## II. RULE 12(B)(1) STANDARD

■ "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.

1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)) "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)), and should "grant[ ] [the motion] only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders*, 143 F.3d at 1010).[4] In reality, "the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Nowak*, 81 F.3d at 1188. The plaintiff bears the burden of proof in the Rule 12(b)(1) context. *See Ramming*, 281 F.3d at 161. The Court accepts as true all allegations and facts in the complaint. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 553 (5th Cir.2010).

## III. THE EXCEPTION BARS THE PLAINTIFFS' CLAIMS

■ "The FTCA, subject to various exceptions, waives sovereign immunity from suits for negligent or wrongful acts of Government employees." *United States v. Gaubert*, 499 U.S. 315, 318 n. 4, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Among the Act's exceptions, "[t]he discretionary function exception withdraws the FTCA's waiver of sovereign immunity in situations in which, although a government employee's actions may have been actionable under state tort law, those actions were required by, or were within the discretion committed to, that employee under federal statute, regulation, or policy." *Spotts v. Unit-*

---

4. Query whether courts should continue to conduct this old-school Rule 12(b)(6)—like analysis in light of the Supreme Court's decisions in *Twombly* and *Iqbal*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*ed States,* 613 F.3d 559, 566 (5th Cir.2010).[5] In examining whether a challenged action falls within the Exception, courts apply a "strong presumption that a discretionary act authorized by [a] regulation involves consideration of the same policies which led to the promulgation of the regulation[ ]." *Gaubert,* 499 U.S. at 324, 111 S.Ct. 1267. In general, "[i]f a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Spotts,* 613 F.3d at 567 (citing *Gaubert,* 499 U.S. at 329, 111 S.Ct. 1267). "When a suit charges an agency with failing to act in accord with a specific mandatory directive," however, "the discretionary function exception does not apply." *Berkovitz ex rel. Berkovitz v. United States,* 486 U.S. 531, 544, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

■ Courts use a two-prong test to evaluate whether the Exception applies. First, courts "consider whether the action is a matter of choice for the acting employee." *Id.* at 536, 108 S.Ct. 1954 (citing *Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)). In doing so, courts focus on "the nature of the conduct, rather than the status of the actor," questioning "whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Second, "'assuming the challenged conduct involves an element of judgment,' it remains to be decided 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Gaubert,* 499 U.S. at 322–23, 111 S.Ct. 1267 (quoting *Varig Airlines,* 467 U.S. at 813, 104 S.Ct. 2755). "[T]he proper inquiry under prong two is not whether [the government actor] *in fact* engaged in a policy analysis when reaching his decision but instead whether his decision was 'susceptible to policy analysis.'" *Spotts,* 613 F.3d at 572 (quoting *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267) (emphasis in original).[6] "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954.

■ The Plaintiffs' complained-of actions satisfy both prongs of the Exception. The Court acknowledges that the alleged instances of unethical conduct and mismanagement, if true, are troubling. And, "[a]ctions taken to carry out a discretionary policy must be taken with sufficient caution to ensure that, at a minimum, some other federal law is not violated in the process." *Spotts,* 613 F.3d at 568 (citation and quotation marks omitted).

The heart of this action, however, consists of an attack on one of the most quintessentially discretionary government functions—an agency's decision to regulate. One need look no further than the

---

5. The Exception provides that the Act's waiver of sovereign immunity excludes

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused.*

28 U.S.C. § 2680(a) (emphasis added).

6. Notably, under *Gaubert,* the Exception's application does not depend on "the agent's subjective intent in exercising the discretion conferred." 499 U.S. at 325, 111 S.Ct. 1267.

converse of the Plaintiffs' three claims: if Barasch had acted ethically, his superiors had supervised properly, and the SEC had investigated competently, the SEC would have instituted an enforcement action before the Plaintiffs invested in the Stanford Defendants' scheme. But, the decision to investigate and prosecute under the federal securities laws falls squarely within the SEC's discretion. *See, e.g.*, 15 U.S.C. §§ 77t, 78u (repeatedly using the phrase, "the Commission may, in its discretion"). And, "whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Varig Airlines*, 467 U.S. at 813–14, 104 S.Ct. 2755.[7]

The complaint also makes clear that the Plaintiffs' attribute their damages specifically to SEC inaction where the Plaintiffs' would have preferred otherwise. *See, e.g.*, Compl. at 21 ("An action under section 206, filed any time between 1998 and February 16, [2009] (the SEC's horribly belated filing date), would have stopped the sales of the Stanford 'certificates of deposit' in the United States—and completely prevented the Plaintiffs' losses.").[8] Yet, the Plaintiffs essentially concede that the investigatory report they rely upon for much of their factual allegations also concluded that the failure to investigate Stanford reflected "pressure from higher ranking SEC officials to give lower priority to Ponzi schemes than to 'accounting' schemes ... 'like Enron.'" Compl. at 26. And, as the Supreme Court recognized in *Varig Airlines*:

> When an agency determines the extent to which it will supervise the [conduct] of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against

---

**7.** In fact, the FTCA's forerunners "specifically exempted two major regulatory agencies by name"—the SEC and the Federal Trade Commission. *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. 2755; *see also id.* at 809–810, 104 S.Ct. 2755 (noting that ultimately "[i]t was considered unnecessary to except by name [those] agencies ... because the language of the discretionary function exception would exemp[t] from the act claims against Federal agencies growing out of their regulatory activities" (citing and quoting various legislative reports)) (citations and internal quotation marks omitted; latter alteration in original); *Dalehite*, 346 U.S. at 29 n. 21, 73 S.Ct. 956 (observing that Congress "designed [the Exception] to preclude application of the [FTCA] to a claim against a regulatory agency, such as ... the [SEC], based upon an alleged abuse of discretionary authority by an officer or employee, whether or not negligence is alleged to have been involved" (quoting paragraph that appeared in numerous legislative authorities)).

**8.** *See also* Compl. at 1 ("the SEC ... in this case had both the authority and the duty to put an end to this scheme"); *id.* at 21, 73 S.Ct. 956 ("[T]he proper identification of the investments as securities at any such time, and a securities action, would likewise have stopped those [CD] sales, just as it did in 2009."); *id.* at 21–23, 73 S.Ct. 956 (block quoting investigative report); *id.* at 26, 73 S.Ct. 956 ("Had Barasch not violated the rules as he did, none of the plaintiffs would or even could have invested with SIB[ ]—it's [sic] doors would have been shut—and the damages suffered by the plaintiffs would have been completely avoided."); *id.* ("Competent and reasonable attention to the many findings and opinions of the FWDO examination staff ... would have caused Barasch to be overruled by his supervisors, and plaintiffs' damages to be prevented."); *id.* at 27, 73 S.Ct. 956 ("[I]t was reasonably foreseeable that [the Plaintiffs] would rely on the SEC to remove the danger posed by Stanford if the SEC had information concerning the existence of that danger.").

such practical considerations as staffing and funding.

467 U.S. at 819–20, 104 S.Ct. 2755.

To find the Exception inapplicable here, moreover, invites the public to use the Act as a means to police government agencies' internal affairs. Congress included the Exception precisely because it "wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort" and " 'to protect the Government from liability that would seriously handicap efficient government operations.' " *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. 2755 (quoting *United States v. Muniz*, 374 U.S. 150, 163, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963)). Because the "[r]efusal to prosecute is a classic illustration of a decision committed to agency discretion," [9] this action implicates those principles. Accordingly, the Court holds that the FTCA's waiver of sovereign immunity does not extend to the Plaintiffs' claims.

### CONCLUSION

Distilled to its essence, Plaintiffs complain that the SEC failed to initiate an investigation of the Stanford Defendants' scheme at the time and in the manner preferred by the Plaintiffs. Because decisions concerning the institution and management of regulatory proceedings fall squarely within the Exception, the Court grants the Government's motion and dismisses the Plaintiffs' claims without prejudice for lack of subject matter jurisdiction.[10]

---

**9.** *Bd. of Trade v. SEC*, 883 F.2d 525, 530 (7th Cir.1989) (Administrative Procedures Act context (citing *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985))).

**10.** *See Hix v. U.S. Army Corps. of Eng'rs*, 155 Fed.Appx. 121, 128–29 (5th Cir.2005) (unpub.) (dismissal for lack of subject matter jurisdiction based on discretionary function exception to FTCA should be without prejudice); *see also Dichter–Mad Family Partners v. United States*, 707 F.Supp.2d 1016, 1041 (C.D.Cal.2010) (dismissing, under the Exception, a Madoff Ponzi scheme-related FTCA action that alleged SEC staff failed to follow ostensibly mandatory duties concerning, among other things, "hiring, training, and/or deploying qualified staff members; avoiding improper personal motivations; and engaging in various administrative case-management tasks"); *Molchatsky v. United States*, 2011 WL 1471798 (S.D.N.Y.2011) (publication pending) (similar, Madoff-related FTCA suit).