United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 16, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

No. 04-41270
Summary Calendar

————————————

DELORES D HIX, Individually and as Personal Representative
of the Estate of Herschel Hix Jr.; CESAR BARRIOS, SR; MONICA
BARRIOS, Individually and as Personal Representative of the
Estate of Cesar Barrios Jr. and as Next Friend of Giselle
Barrios, A Minor

Plaintiffs - Appellants

v.

UNITED STATES ARMY CORPS OF ENGINEERS, Agency of the United
States of America; Et Al

Defendants

UNITED STATES ARMY CORPS OF ENGINEERS, Agency of the United
States of America; J&S CONTRACTORS INC

Defendants - Appellees

————————————————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas, Galveston
No. 3:03-CV-376

————————————————————————————————————————

Before KING, Chief Judge, and SMITH and GARZA, Circuit Judges.

PER CURIAM:[*]

In this Federal Tort Claims Act negligence action,

plaintiffs-appellants Delores Hix, Cesar Barrios, and Monica

—————————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Barrios (collectively, "Appellants") appeal the dismissal of their lawsuit against defendants-appellees United States Army Corps of Engineers ("USACE") and J&S Contractors, Inc. ("J&S"). Specifically, they allege that the district court erred in granting USACE's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, granting J&S's summary judgment motion, and dismissing their claims against both parties with prejudice. Because we agree that the district court was without subject-matter jurisdiction, we AFFIRM the district court's dismissal of the action, but we VACATE the final order of dismissal and REMAND to the district court for the entry of a judgment of dismissal of all claims without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from two drownings that occurred on June 30, 2001, near the jetties that are located on the east end of Galveston Island, Texas. USACE maintains the jetties, breakwaters, and groins that line the east end of Galveston Island. These rubble-stone structures are designed to protect the Houston-Galveston Entrance Channel, a USACE navigation project, from shoaling. They are not designed for public recreation; however, the public often uses the jetties as walkways for fishing or sightseeing on the beach. USACE regulations allow USACE officials to post signs warning the public of the safety hazards of tripping or falling while walking

-2-

on the jetties.  Pursuant to these regulations, USACE placed warning signs along the east end of Galveston Island that cautioned, "Warning-Hazardous Walking Surface-Use At Your Own Risk."

In May 2001, during a Galveston City Council meeting, a citizen expressed concern about the dangers that strong currents in the ship channel on the east end of Galveston Island posed to swimmers and waders.  In response to this concern, on May 23, city officials posted a bright orange warning sign on a jetty on the east end of Galveston Island that read, "STRONG CURRENT-SWIM AT YOUR OWN RISK."  The city affixed this sign to a USACE-owned wooden sign post below an existing USACE sign.  The record does not reflect that the city informed USACE of this action or that it sought USACE's permission to post its sign in that location.[1]

Also in May 2001, USACE had entered into a written contract with J&S, under which J&S had agreed to perform "sign replacement activities" for USACE on Galveston Island.  This project entailed replacing missing, damaged, or outdated warning signs with updated signs that stated, "Warning-Structure is Not Designed for Public Access-Proceed at Your Own Risk."  The Galveston District

---

[1] Although Appellants argue that USACE did give the city permission to use its sign posts before the drownings occurred, the only evidence in the record that they cite to support this contention is an e-mail written by USACE Colonel Nicholas Buechler noting that he had offered USACE sign posts to the city on July 5, 2001, six days <u>after</u> the drownings at issue.  5 R. at 855-58.

Operations Manager, Bill Jakeway, supervised this project. Jakeway, whose duties included serving as the Project Sign Program Manager for jetties, groins, and breakwaters, used the USACE Sign Standards Manual as a guide to evaluate the conditions of existing signs and sign posts and to determine which ones needed to be replaced.

While performing the contract work, a J&S employee discovered the city's unauthorized signs on the USACE sign posts that were scheduled to be replaced and asked Jakeway how to proceed. Jakeway instructed him to remove the unauthorized signs along with the old USACE signs and sign posts as required by contract specifications. The J&S crew followed Jakeway's instructions and removed the city signs and the old USACE signs and sign posts. J&S ultimately removed all of the signs and replaced the old USACE signs in accordance with the specific instructions from Jakeway and USACE. J&S fully complied with the terms of the contract and, upon completion of the job, USACE paid J&S for its services.

Shortly after the sign replacement work was complete, on June 30, 2001, Cesar and Monica Barrios went on a fishing trip on the east end of Galveston Island with their two children, Cesar Jr., age six, and Giselle, age nine. The two children waded into the ship channel and were swept away by the strong current. Herschel Hix, a bystander, dove into the ship channel in an attempt to rescue the children. Hix rescued Giselle but was

-4-

unable to save Cesar Jr., who drowned.  Hix died during the rescue attempt.

Appellants, as survivors of the decedents, filed a lawsuit against USACE and J&S pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) (2000), for survivor injuries, personal injuries, and wrongful death in the United States District Court for the Southern District of Texas.[2] Specifically, they argued that USACE and J&S were negligent in removing the city's warning signs along the east end of Galveston Island, and that this negligence caused the deaths of Herschel Hix and Cesar Barrios Jr.  USACE filed a FED. R. CIV. P. 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.  J&S filed a FED. R. CIV. P. 56 motion for summary judgment and a motion for joinder in USACE's Rule 12(b)(1) motion to dismiss. The district court held that it did not have subject-matter jurisdiction over the claims against USACE or J&S because their acts or omissions concerning the Galveston jetty sign repair project were discretionary in nature; thus, the discretionary function exception to the FTCA's waiver of sovereign immunity, 28 U.S.C. § 2680(a), applied.  Accordingly, the district court granted USACE's 12(b)(1) motion to dismiss.  Reiterating that it

_____

[2] Appellants also named the City of Galveston and the County of Galveston as defendants, invoking the court's supplemental jurisdiction, 28 U.S.C. § 1367, to bring Texas state-law claims of negligence, premises liability, and nuisance.  Appellants do not challenge the district court's dismissal of those claims on this appeal.

lacked subject-matter jurisdiction, and without providing further reasoning, the district court also granted J&S's motion for summary judgment.  It then dismissed the claims against both parties with prejudice.  This timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

Before addressing the merits of a case, a federal court must first determine whether jurisdiction is proper.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1995).  We review de novo whether a federal court has subject-matter jurisdiction.[3] Chapa v. United States Dep't of Justice, 339 F.3d 388, 398 (5th Cir. 2003); Price v. United States, 69 F.3d 46, 49 (5th Cir. 1995).  Further, in determining whether subject-matter jurisdiction exists, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign."  Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998).

---

[3] Because all of the facts pertinent to the jurisdictional inquiry are undisputed, and because the district court based its holding that it lacked subject-matter jurisdiction on the complaint supplemented by these undisputed facts, "our review is limited to determining whether the district court's application of the law is correct and . . . whether those facts are indeed disputed."  Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).  Although Appellants argue that the district court erroneously resolved disputed facts in reaching its holding, see, e.g., supra note 1, the record does not reflect that such facts are indeed disputed; moreover, even if such facts were disputed, they are not relevant to the jurisdictional determination that USACE's and J&S's conduct was discretionary in nature.

-6-

**B. Analysis**

Appellants argue that the district court erred by (1) holding that it lacked subject-matter jurisdiction over the claims against USACE and J&S because the discretionary function exception to the FTCA applied to their actions; and (2) dismissing Appellants' claims against USACE under Rule 12(b)(1) for lack of subject-matter jurisdiction, granting summary judgment on behalf of J&S, and dismissing the claims against both with prejudice.

**1. Discretionary Function Exception to the FTCA**

Under the doctrine of sovereign immunity, the federal government cannot be sued in its capacity as a sovereign unless it consents to be sued. See United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). For the federal government to consent to be sued, Congress must waive sovereign immunity by explicitly extending to federal courts subject-matter jurisdiction over a specified cause of action. Id. The FTCA waives sovereign immunity and allows private individuals to sue the federal government for the negligent torts of its employees by granting federal courts exclusive subject-matter jurisdiction over

> civil actions on claims against the United States, for
> money damages . . . for injury or loss of property, or

-7-

personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

However, the FTCA enumerates a number of exceptions to this waiver of sovereign immunity, including an exception that excludes from its grant of subject-matter jurisdiction claims challenging "discretionary functions" performed by government employees.  The discretionary function exception covers

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute be valid, <u>or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.</u>

28 U.S.C. § 2680(a) (emphasis added).[4]  This exception also

---

[4] Without citing to any authority, Appellants argue that the discretionary function exception cannot apply unless the government official has exercised due care.  <u>See</u> Appellants' Br. at 9.  This argument is without merit.  We have made clear that the disjunctive "or" in § 2680(a) separates two distinct exceptions to the FTCA, and that the discretionary function exception contained in the second clause of the provision applies <u>regardless of whether the government official has exercised due care</u>.  <u>See</u> <u>Buchanan v. United States</u>, 915 F.2d 969, 970-71 (5th Cir. 1990); <u>Lively v. United States</u>, 870 F.2d 296, 297 (5th Cir. 1989).  "The question which we must answer, therefore, is not whether the Government acted with due care but whether the Government's conduct was the result of the performance of a discretionary function."  <u>Lively</u>, 870 F.2d at 297.  We thus reject Appellants' contention that USACE must establish that it exercised due care as a prerequisite for immunity from suit under the discretionary function exception.

extends to contractors who work to implement programs as agents of the federal government. Bynum v. FMC Corp., 770 F.2d 556, 564 (5th Cir. 1985) ("[W]hen contractors as agents or officers of the federal government . . . work according to government specifications, they are entitled to assert the government's sovereign immunity in suits arising from that activity."); see also Yearsley v. W.A. Ross Constr. Co., 309 U.S. 18, 21 (1940).

To determine whether the discretionary function exception applies to a government act, a court must first decide whether the act is discretionary in nature. United States v. Gaubert, 499 U.S. 315, 322-23 (1991); Guile v. United States, 422 F.3d 221, 229 (5th Cir. 2005). To be discretionary, an act must "'involve an element of judgment or choice.'" Gaubert, 499 U.S. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). An act does not involve judgment or choice "if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" Id. (quoting Berkovitz, 486 U.S. at 536).

Second, even if the government conduct involves an element of judgment, that judgment must be "of the kind that the discretionary function exception was designed to shield." United States v. Varig Airlines, 467 U.S. 797, 813 (1984); see also

<u>Gaubert</u>, 499 U.S. at 322-23.  Because the discretionary function exception is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," it applies only to government acts that are based on public policy considerations.  <u>Varig Airlines</u>, 467 U.S. at 813.  Therefore,

> [w]here Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs.  In addition, the actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations are protected.

<u>Gaubert</u>, 499 U.S. at 323.  Moreover, whenever a government employee takes an action pursuant to a regulation that provides for discretion, "the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations."  <u>Id.</u> at 324.

In this case, USACE's decision to remove the city's warning sign and J&S's subsequent removal of the sign per USACE's instructions fall squarely within the discretionary function exception to the FTCA.  First, the decision to remove the city's warning signs as part of the larger USACE sign-replacement project was pursuant to a delegation of authority from Congress

and "involved an element of judgment or choice."[5] <u>Gaubert</u>, 499 U.S. at 322.  In his capacity as Project Sign Program Manager for jetties, groins, and breakwaters on Galveston Island, Bill Jakeway was responsible for evaluating conditions of existing signs and developing a sign plan for the area pursuant to USACE regulations giving him broad discretion in the implementation of government policy regarding public safety on USACE jetties.  As

[5] In the River and Harbor Act of 1894, 33 U.S.C. § 1, Congress delegated to the Secretary of the Army the authority to "prescribe such regulations for the use, administration, and navigation of the navigable waters of the United States as in his judgment the public necessity may require for the protection of life and property, or of operations of the United States in channel improvement."  <u>Id.</u>

Pursuant to this delegation of authority, USACE has promulgated a number of regulations directly addressing jetty maintenance and public safety activities along the navigable waters of the United States.  Chapter 3 of USACE Regulation No. 1130-2-520 (Nov. 29, 1996), "Project Operations Navigation and Dredging Operations and Maintenance Policies," provides that USACE officials should maintain jetties "for their functions as navigation aids and shoreline protection structures in a manner that does not enhance or encourage recreational or other public use."  2 R. at 548-49.  Moreover, these officials "shall be responsible for determining minimum facilities for public health and safety, such as guardrails, barricades, fencing, and warning signs."  <u>Id.</u>  This chapter provides guidance to USACE officials in implementing these policies with regard to warning signs, giving them the choice of (a) taking no action, (b) posting warning signs, or (c) denying access to the area.  <u>Id.</u>

Chapter 6 of USACE Regulation No. 1130-2-50 (Dec. 27, 1996), "Sign Standards Progress for Civil Works Projects," further addresses the posting of warning signs for USACE officials who choose to post them, providing for the appointment of a Sign Program Manager responsible for ordering and approving new signs for civil works projects.  2 R. at 540.  The Sign Program Manager follows the guidelines laid out in the USACE Sign Standards Manual, which instructs that "the appropriateness of an individual sign to a setting is to be determined by the Project Sign Program Manager on a case-by-case basis."  2 R. at 537.

part of the sign replacement project, Jakeway decided to remove the city's unauthorized warning signs that were affixed to USACE property and instructed J&S to carry out his orders.  This decision was discretionary in nature and was within the discretion provided by the applicable statutes and regulations. See Guile v. United States, 422 F.3d 221, 228-31 (5th Cir. 2005) (holding that the United States Army's decision to hire a health care organization to provide psychiatric services and its decision to supervise and how closely to supervise the organization's work were discretionary in nature); ALX El Dorado, Inc. v. Sw. Sav. & Loan, 36 F.3d 409, 410-12 (5th Cir. 1994) (holding that the federal government's supervision of financial institutions under the receivership of the Federal Savings and Loan Insurance Corporation was a discretionary function).

Second, this government conduct was "of the kind that the discretionary function exception was designed to shield" because it was based on public policy considerations.  Varig Airlines, 467 U.S. at 813.  Jakeway's discretionary decisions and J&S's actions as a USACE agent[6] were in the course of carrying out governmental programs pursuant to USACE regulations, and their actions were grounded in the same policies underlying those

_____

[6] Neither party disputes that J&S, as a contractor paid to perform sign replacement activities on behalf of USACE, was a USACE agent during the relevant time.  USACE's sovereign immunity protection under the discretionary function exception thus extends to J&S as well.  See Bynum, 770 F.2d at 564.

regulations: ensuring public safety in the area surrounding the Galveston Island jetties without encouraging public use of the jetties.  See Gaubert, 499 U.S. at 323.[7]  A suit in tort is an inappropriate vehicle to challenge these legislative and administrative policies.  Gaubert, 499 U.S. at 322; Varig Airlines, 467 U.S. at 813.

## 2. Dismissal of Appellants' Claims

Because the discretionary function exception applies to USACE's and J&S's conduct during the Galveston Island sign replacement project, the district court was correct to conclude that it lacked subject-matter jurisdiction over Appellants' claims.  ALX El Dorado, 36 F.3d at 410 n.5; McNeily v. United States, 6 F.3d 343, 347 (5th Cir. 1993).  "'Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to a court is that of announcing the fact and dismissing the cause.'"  Steel Co., 523 U.S. at 94 (quoting Ex parte McCardle, 7 Wall. 506, 514 (1868)).  Thus, "[a] federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction."  Stanley v. Cent. Intelligence Agency, 639 F.2d 1146, 1157 (5th Cir. 1981) (internal citations omitted).  Furthermore, "[w]hen a court must dismiss a case for lack of jurisdiction, the court should not adjudicate the merits

---

[7] See also supra note 5.

of the claim."  Id.

Because it lacked subject-matter jurisdiction, the district court's dismissal of Appellants' claims against USACE on Rule 12(b)(1) grounds was appropriate.  See ALX El Dorado, 36 F.3d at 410 n.5 ("The district court's conclusion that the 'discretionary function' exception applied divested it of jurisdiction over the United States; thus, the proper ground for dismissal should have been Rule 12(b)(1)."); Davis v. United States, 961 F.2d 53, 55-56 (5th Cir. 1991) (affirming the district court's dismissal for lack of subject-matter jurisdiction where an exception to the FTCA applied to the challenged governmental acts); Buchanan, 915 F.2d at 970 ("If the government's conduct falls within the discretionary function exception to the FTCA, then the district court properly dismissed the case for lack of subject matter jurisdiction.").[8]

---

[8] Appellants argue that the district court should have "converted" USACE's Rule 12(b)(1) motion to dismiss into a motion for summary judgment because "the jurisdiction facts are intertwined with the operative facts of the case."  Appellants' Br. at 4.  We disagree.  This court has held that where a "challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" under either Rule 12(b)(6) or Rule 56.  Williamson, 645 F.2d at 415; see also Montez v. Dep't of Navy, 392 F.3d 147, 150 (5th Cir. 2004).
In this case, however, the merits of the actual cause of action--state-law negligence--are irrelevant to our determination of whether § 1346(b)(1) granted the district court subject-matter jurisdiction over those negligence claims, or whether the discretionary function exception of § 2680(a) divested the district court of jurisdiction.  Ford v. Am. Motors Corp., 770

The district court erred, however, when it granted J&S's motion for summary judgment for lack of subject-matter jurisdiction. Because summary judgment acts as a final adjudication on the merits, the court was without jurisdiction to enter such a judgment. See Stanley, 639 F.2d at 1157 ("Since the granting of summary judgment is a disposition on the merits of the case, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction."). Therefore, because the discretionary function exception "is premised on the notion that there is no jurisdiction to hear the claim as the United States has not waived sovereign immunity for that kind of suit, such defenses should be raised by a motion to dismiss for lack of subject matter jurisdiction rather than by a motion for summary judgment." Id.; see also Bank One Tex. v. United States, 157 F.3d 397, 403 n.12 (5th Cir. 1998) ("Granting summary judgment is an inappropriate way to effect a dismissal for lack of subject

---

F.2d 465, 468 (5th Cir. 1985) (holding that, where the discretionary function exception to the FTCA barred the plaintiffs' negligence claims, "[t]he merits and the jurisdictional issue were not so intermeshed as to prevent the separate consideration and decision of the jurisdiction question" and affirming the dismissal of the claims on Rule 12(b)(1) grounds); see also Lively, 870 F.2d at 297 (holding that negligence is not an element of the discretionary function exception to the FTCA). Therefore, the district court was correct to dismiss USACE's claims under a 12(b)(1) standard. See Davis, 961 F.2d at 56 n.4 (holding that dismissal on 12(b)(1) grounds was appropriate where the district court lacked subject-matter jurisdiction under the FTCA).

matter jurisdiction."). Accordingly, the district court erred when it dismissed the claims against J&S on summary judgment instead of on Rule 12(b)(1) grounds.

Finally, because it lacked subject-matter jurisdiction over Appellants' claims, the district court erred in dismissing the claims with prejudice, which also operates as a judgment on the merits. See Brooks v. Raymond Dugat Co., 336 F.3d 360, 362 (5th Cir. 2003); Schwartz v. Folloder, 767 F.2d 125, 129 (5th Cir. 1985) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this.") (internal quotation marks omitted); see also FED. R. CIV. P. 41(b) ("[A] dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction . . . operates as an adjudication upon the merits."). Because the district court did not reach the merits of Appellants' claims, and did not have jurisdiction to do so, it was incorrect to dismiss those claims with prejudice. Davis, 961 F.2d at 57 (affirming the district court's dismissal of claims over which it did not have subject-matter jurisdiction, but vacating the final order of dismissal with prejudice and remanding for an entry of judgment without prejudice).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of Appellants' claims against both USACE and J&S for lack of subject-matter jurisdiction, VACATE the final order of dismissal, and REMAND to the district court for entry of an order of dismissal without prejudice.  Costs shall be borne by appellants.