# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 18, 2011

Lyle W. Cayce
Clerk

No. 10-30259
Summary Calendar

MS TABEA SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG,

Plaintiff

v.

BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS,

Defendant - Third Party Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

Defendant - Third Party Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Board of Commissioners of the Port of New Orleans ("the Dock Board") appeals from the district court's interlocutory order dismissing the Dock Board's failure to dredge claims against the United States for lack of subject matter jurisdiction. The Dock Board contends that the United States, through the Army Corps of Engineers, had a duty to dredge and properly maintain

No. 10-30259

certain depths in the Mississippi River near the Port of New Orleans, that the Corps' failure to dredge caused the grounding of a containership, and that the United States should be held liable for related damages.

We have previously held that the United States has not waived sovereign immunity for claims, like this one, challenging the Army Corps of Engineers' discretionary judgments concerning when and whether to dredge the nation's navigable waterways. *See Canadian Pac. Ltd. v. United States*, 534 F.2d 1165, 1171 (5th Cir. 1976). The novel question in this appeal is whether the Corps ceded that discretion when it granted the Dock Board a permit to dredge in the Port of New Orleans and the Dock Board completed such dredging at its own expense thereafter. We hold that it did not, and AFFIRM the district court's dismissal order accordingly.

## I

This case arises out of the damage sustained by the M/V MSC TURCHIA when it grounded and allided with the Napolean Avenue Wharf in the Port of New Orleans in June 2008. The ship's owner ("Tabea") and the Dock Board sued the United States, alleging, *inter alia*, that the Army Corps of Engineers had a statutory duty to dredge and maintain the Mississippi River as a navigable waterway, and that the ship's grounding was caused, in part, by the Corps' failure to do so. In addition to the parties' failure to dredge claims, Tabea also raised a failure to warn claim alleging that the Corps was aware of shoaling in the Napolean Avenue Wharf vicinity but failed to warn mariners of the hazard.

The United States ("the Government") moved to dismiss all claims for lack of subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1). The Government argued that it did not have a statutory responsibility to dredge the Mississippi River to any particular depth or at any particular time. The Government also argued that because its dredging operations in the nation's waterways are purely discretionary and susceptible to policy analysis, the Army Corps of Engineers'

No. 10-30259

dredging decisions here, as elsewhere, fell within the discretionary function doctrine and, consequently, were not subject to a waiver of sovereign immunity (i.e., the Dock Board's suit against the Government was barred as a matter of law).

In response, the Dock Board argued that § 2232(f) of the Water Resources Development Act ("WRDA"), 33 U.S.C. § 2211 *et seq*, which was enacted after our decision in *Canadian Pacific*, imposed a discretionless obligation on the Corps to dredge and maintain the Mississippi River bottom at a depth of -45 feet Mean Low Gulf (MLG). The Dock Board claimed that when it was granted a permit to dredge to a depth of -45 feet MLG in the Napolean Avenue Wharf area and then paid for such dredging, § 2232(f) required the Government to maintain dredging at that depth thereafter. If correct, such a binding obligation would bring this matter outside the discretionary function doctrine and render the United States liable to suit. *See* 46 U.S.C. § 30903.

The district court found that, notwithstanding the Dock Board's permit, § 2232(f) did not eliminate the Corps' discretion to determine when and how it would conduct dredging operations in the Mississippi River. The court explained that such decisions involved an element of "judgment or choice," were susceptible to policy analysis, and, thus, fell within the discretionary function doctrine. The court found that the United States had not waived sovereign immunity and dismissed the Dock Board's failure to dredge claims accordingly. The court denied the Government's motion to dismiss with respect to the parties' failure to warn claims and set those issues for trial.

The Dock Board timely appealed.

## II

This case requires us to determine whether, in light of the Dock Board's permit and self-financed dredging in the Port of New Orleans, § 2232(f) of the WRDA obligated the Government to maintain dredging at a certain depth in the

No. 10-30259

harbor thereafter. We review questions of statutory construction de novo. *See United States v. Quintana-Gomez*, 521 F.3d 495, 496 (5th Cir. 2008). We also review de novo a district court's order granting the Government's motion to dismiss for lack of subject-matter jurisdiction, applying the same standards as the district court. *See Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010).

## A

Before we address the district court's subject matter jurisdiction we must first determine our own. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1945 (2009) ("Subject-matter jurisdiction . . . should be considered when fairly in doubt."). The Dock Board, upon which the burden to demonstrate subject matter jurisdiction lies, *see Howrey v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), declares that our power to hear this appeal rests on 28 U.S.C. § 1292(a)(3). The Government disagrees, and claims that the Dock Board's interlocutory appeal is premature and should be dismissed "because the rights and liabilities of none of the parties have been established." Appellee's Br. at 10. The Government contends that because the district court's February 19, 2010 order, from which the instant appeal is taken, only disposed of the Dock Board's failure to dredge claims and left the parties' failure to warn claims for trial, the rights and liabilities of the parties have not been conclusively determined and, thus, this interlocutory appeal is premature. This argument need not detain us long.

Congress has given the courts of appeals jurisdiction over interlocutory appeals in certain, limited circumstances. *See Dardar v. Lafourche Realty Co.*, 849 F.2d 955, 957 (5th Cir. 1988). 28 U.S.C. § 1292(a)(3) provides this court with jurisdiction over "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." As a general rule, we have

4

No. 10-30259

permitted appeals under § 1292(a)(3) whenever an order in an admiralty case dismisses a claim for relief on the merits. *See Aparicio v. Swan Lake*, 643 F.2d 1109, 1111 n.6 (5th Cir. 1981) ("An order that dismisses on the merits only one of several separate claims for relief is appealable under Section 1292(a)(3)."); *see also Walter E. Heller & Co. v. O/S Sonny V*, 595 F.2d 968, 971 (5th Cir. 1979) ("The term 'interlocutory decrees' in section 1292(a)(3) is broadly interpreted."); *Bergeron v. Elliot*, 466 F.2d 514, 516 n.3 (5th Cir. 1972); *Crews v. Arundel Corp.*, 386 F.2d 528, 529–30 (5th Cir. 1967).

Here, when the district court dismissed the Dock Board's failure to dredge claims against the United States for lack of subject matter jurisdiction, it conclusively determined the parties' rights and liabilities with respect to those claims. The pendency of other, separate claims in the underlying admiralty case is immaterial for purposes of § 1292(a)(3). We have jurisdiction to consider this appeal.

**B**

The "discretionary function exception" is a statutory limit on the United States' general waiver of sovereign immunity under the Federal Tort Claims Act.[1] It provides that the waiver will not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

---

[1] The Suits in Admiralty Act (SAA), which Tabea and the Dock Board have invoked in this case, provides the appropriate waiver for maritime tort claims against the United States. *See* 46 U.S.C. § 30903. Although the discretionary function exception is not referenced in the SAA, we have found that the exception applies in SAA cases. *See Baldassaro v. United States*, 64 F.3d 206, 208 (5th Cir. 1995).

28 U.S.C. § 2680(a).  The purpose of the exception is to eliminate the possibility of suit for any act that involves "an element of judgment or choice" on the part of a government agency or employee. *See United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citation omitted).  The discretionary function exception "prevent[s] judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).  By fashioning an exception for discretionary governmental functions, Congress took "steps to protect the Government from liability that would seriously handicap efficient government operations."  *Id.* (citing *United States v. Muniz*, 374 U.S. 150, 163 (1950)).

The Supreme Court has developed a two-part test for determining whether governmental conduct qualifies as a discretionary function or duty.  First, the court considers whether the challenged conduct involved "an element of judgment or choice." *Gaubert*, 499 U.S. at 322.  If a federal statute, regulation, or policy "specifically prescribes a course of action for an employee to follow," the requirement of judgment or choice is not satisfied because the employee has "no rightful option but to adhere to the directive."  *Id.* (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).  But where the statute, regulation, or policy leaves it to a federal agency or employee to determine when and how to take action, the agency or employee is not bound to act in a particular manner and the exercise of its authority is discretionary.  *See id*. at 329.

Second, the court considers whether the judgment at issue is the kind the discretionary function exception was designed to protect, that is, whether it is grounded in social, economic, or public policy. *See Gaubert*, 499 U.S. at 322–23; *see also Varig Airlines*, 467 U.S. at 814.  When a statute, regulation, or agency guideline allows a Government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that

discretion." *Id.* at 324.  In light of this presumption, to survive a motion to dismiss based on the discretionary function exception, a complaint "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* at 324–25.  In determining whether the exception bars a suit against the Government, our focus is on the nature of the action taken and whether that action is susceptible to policy analysis.  *Id.* at 325.

In *Canadian Pacific Ltd. v. United States,* we determined that the United States had not waived sovereign immunity for claims challenging the Army Corps of Engineers' discretionary judgments concerning the frequency of dredging in the nation's waterways.  *See id.*, 534 F.2d at 1171.  Specifically, we observed that there was

> [N]o duty imposed on the Corps . . . to survey or dredge . . . at any particular time or place.  To require such a duty would in effect make the Government the guarantor or insurer of the navigability at all times of the river, despite its ever-changing bed affected by tide, currents, erosion and wave wash of vessels constantly plying its course, and the limitation of funds available to the Corps.

*Id.* at 1170.  While the Corps is statutorily charged with maintaining and improving the nation's waterways, *see* 33 U.S.C. § 540 and § 622(a), "this grant of power certainly is not an assumption of the duty to make all interstate waterways navigable."  *Id.* at 1170 (quotation omitted).

The Dock Board does not contest these points of law as a general matter. Instead, it contends that on the special facts of this case, § 2232(f) of the WRDA, which was not at issue in *Canadian Pacific*, imposes a nondiscretionary duty on the Government to maintain a depth of -45 feet MLG in the location where the M/V MSC TURCHIA's grounding occurred.  This is because, the Dock Board argues, it applied for and was granted a permit to dredge the harbor to that depth and then completed such dredging at its own expense.

7

No. 10-30259

The WRDA authorizes non-Federal interests, like the Dock Board, to make improvements to the nation's harbors and waterways subject to obtaining the appropriate permits. *See* 33 U.S.C. § 2232(a). In 2002, the Dock Board applied for and was granted a permit from the Corps to dredge to a depth of -45 feet MLG from the face of the Napolean Avenue Wharf to the naturally occurring deep draft navigation channel in the Mississippi River. The Dock Board completed such dredging at its own expense in 2002 *and again in 2005.* The Dock Board now claims that under § 2232(f), the Army Corps of Engineers became duty-bound to dredge and maintain navigability in the Napolean Avenue Wharf area—to the specifications described in the permit—once the Corps granted the Dock Board a permit under § 2232(a) and the Dock Board financed the initial dredging project.

Section 2232(f) of the WRDA provides that:

Whenever a non-Federal interest constructs improvements to any harbor or inland harbor, the Secretary shall be responsible for maintenance in accordance with section 2211(b) of this title if—

(1) the Secretary determines, before construction, that the improvements, or separable elements thereof, are economically justified, environmentally acceptable, and consistent with the purposes of this subchapter;

(2) the Secretary certifies that the project is constructed in accordance with applicable permits and the appropriate engineering and design standards; and

(3) the Secretary does not find that the project, or separable element thereof, is no longer economically justified or environmentally acceptable.

33 U.S.C. § 2232(f). This provision unequivocally vests the Secretary [of the Army] with the discretion to determine whether or not to maintain a non-federal harbor improvement project. The Dock Board relies on the fact that the statute states that the "Secretary shall be responsible for maintenance," in arguing that

8

the Government has no discretion in its maintenance decisions. However, § 2232(f)(1) clearly gives the Secretary the discretion to determine ex ante the feasibility of maintaining any such non-federal projects. The statute's use of the word "shall" simply indicates that the Secretary of the Army must make a decision, but it does not indicate what decision he must make.

Moreover, § 2232(f)(3) gives the Secretary the option to reevaluate, at any time after construction, whether a project continues to be "economically justified or environmentally acceptable." Thus, the Corps has the power to determine ex post that a project is no longer economically justified and not worthy of continued federal funding for maintenance. Sections 2232(f)(1) and (3) both require discretionary judgments on the part of the Corps that are specifically the kind the discretionary function exception was designed to protect, i.e., decisions grounded in social, economic, and public policy.

The Dock Board suggests that the Army Corps of Engineers made the requisite policy determinations called for in § 2232(f) when the Corps issued a permit allowing the Dock Board to dredge in the Port of New Orleans. The Dock Board points to Corps' policy on the issuance of permits for harbor improvements, in which the Corps states that economic and environmental factors, among other factors, will be considered in the issuance of a permit. *See* 33 C.F.R. § 320.4(a)(1). However, we agree with the district court for the reasons stated in its memorandum order that the economic and environmental analysis required for permitting purposes under § 320.4(a)(1) is distinct from the analysis required under 33 U.S.C. § 2232(f) for committing federal funds to maintaining a harbor project. To hold otherwise would require the Corps to finance the maintenance of every project that it awards a permit for under § 320.4(a)(1).

There is yet another reason to reject the Dock Board's claim that a permit issued under § 320.4(a)(1) proxies for the policy-based criteria set forth in § 2232(f)(1)-(3), all three of which must be met before the Government becomes

obligated to maintain a non-federal project. Section 2232(f)(2) describes a process in which, *inter alia*, the Secretary of the Army "certifies" that a project is constructed "in accordance with applicable permits." This provision clearly imposes a condition—certification by the Secretary of the Army—which must be met *aside from the permitting process* before the issue of obligatory federal funding is ripe. Although the Dock Board has not addressed this portion of the statute on brief, its argument would require us to read out of § 2232(f)(2) the certification requirement. This we decline to do.

The Army Corps of Engineers' judgments concerning dredging in the Mississippi River are quintessentially discretionary and susceptible to policy analysis. Section 2232(f) of the WRDA and the Dock Board's permit do nothing to change this. As such, the Dock Board's failure to dredge claims were barred as a matter of law by the discretionary function exception. 28 U.S.C. § 2680(a).

## III

The district court's order dismissing the Dock Board's failure to dredge claims under FED. R. CIV. P. 12(b)(1) is AFFIRMED.