# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31303

United States Court of Appeals
Fifth Circuit

**FILED**

January 4, 2016

Lyle W. Cayce
Clerk

WILLIAM GIBSON; RITA GIBSON,

      Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA; FEDERAL EMERGENCY
MANAGEMENT AGENCY,

      Defendants - Appellees

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

William Gibson fell and sustained injuries while exiting a trailer or mobile home owned by the Federal Emergency Management Agency ("FEMA"). Gibson and his wife, Rita Gibson, sued FEMA under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. The district court granted FEMA's motion for summary judgment on the basis that the claims are barred by the FTCA's discretionary function exception. We REVERSE and REMAND for further proceedings.

No. 14-31303

## FACTUAL AND PROCEDURAL BACKGROUND

Among its many services, FEMA provides trailers or mobile homes to victims of natural disasters. When a trailer is no longer to be used, it is transported to a FEMA storage site. On the day of the accident, November 1, 2010, Gibson was at a FEMA storage site in Baton Rouge, Louisiana, inspecting trailers that were to be sold at auction. In her deposition, FEMA employee Joan Johnson described the Baton Rouge site as "a federal property [with] a fence around it" containing "a hundred and some odd acres," and it typically "had hundreds . . . of trailers." Johnson's job was to accompany customers while they inspected trailers available at auction because members of the public were not allowed to walk around the site unsupervised.

According to the Gibsons, "most of the FEMA trailers were equipped with a set of pull-out steps providing access, [but] the mobile homes were not." The parties on appeal, as well as the district court in its summary judgment opinion, have used the term "trailer" to refer to the relevant mobile home. Because the distinction between trailers and mobile homes is not dispositive in this appeal, we adopt the same terminology. On prior occasions, Gibson would enter the trailers by sitting in the doorway, turning into the trailer, and then standing up. On November 1, Johnson accompanied Gibson while he inspected four or five trailers without incident. There is some dispute about how Gibson entered these trailers that day – whether he used a small step-stool or a stepladder. Both parties agree, though, that during the final trailer inspection, which had no attached stairs, Gibson used a stepladder to reach the trailer's doorway. The doorway was between two and four feet above the ground. According to Herman Jones, a FEMA employee, this trailer was situated on top of "hard gravel."

Johnson testified that Gibson asked to use her stepladder to enter this final trailer. Gibson, however, contends that he never requested to use

2

No. 14-31303

Johnson's stepladder; instead, Johnson directed Gibson to use it. During his deposition, Gibson first testified that Johnson set up the stepladder in front of the trailer. Later in that same deposition, though, Gibson testified that he could not remember who set up the stepladder. For her part, Johnson maintains that Gibson set up the stepladder on his own. Gibson conceded that he moved the stepladder around to ensure it was stable before he used it to reach the trailer's entrance.

Gibson successfully used the stepladder to enter the trailer. Before attempting to exit and descend, Gibson contends he tried to get Johnson's attention. Johnson was approximately 40 feet away and talking on her cell phone. After waiting two minutes, Gibson began to descend the stepladder without Johnson's assistance. He remembers holding the trailer and putting both feet securely on the stepladder's rungs. Gibson fell from the stepladder as he attempted to step down, but he does not know what caused his fall. He claims no memory of the fall itself.

In contrast to Gibson's version of events, Johnson maintains she was standing by the door as Gibson exited the trailer. Johnson stated that Gibson had one foot on the ladder when his body started shifting, and he lost his balance as he attempted to put his other foot on the ladder. Johnson instinctively reached for Gibson in an attempt to help but quickly withdrew to prevent herself from being injured. Johnson called for assistance; several FEMA employees arrived to assist Gibson into an ambulance.

The Gibsons allege that the United States is liable under the FTCA for numerous acts of negligence: (1) "[f]ailing to provide stairs with handrails . . . to inspect mobile homes"; (2) "[f]ailing to follow [FEMA] safety regulations . . . by not providing hand rails for stairs to enter mobile homes"; (3) "[f]ailing to provide a solid surface upon which to place stairs or ladders when entering a mobile home"; (4) "[u]sing an under rated ladder to give to invitees to gain

3

access to [the Government's] mobile homes"; (5) "[f]ailing to follow general safety regulations in the industry"; (6) "[f]ailing to properly train employees on regulations required for invitee safety"; (7) "[f]ailing to properly supervise employees"; (8) "[s]upplying employees with under rated ladders to give to invitees to inspect mobile homes"; (9) "[f]ailing to train and supervise employees in the proper techniques to spot and hold ladders"; (10) "[f]ailing to require employees to hold ladders firm"; (11) "[f]ailing to properly supervise employees who were constantly using cell phones for personal calls and not properly attending and monitoring invitees"; and (12) "[f]ailing to prevent personal cell phone usage by employees."

The Gibsons sought $9,671,682 in damages "arising out of a significant leg fracture." On cross-motions for summary judgment, the district court entered judgment on behalf of the Government. The Gibsons appeal.

## DISCUSSION

Under the doctrine of sovereign immunity, a plaintiff may not sue the United States unless a federal statute explicitly provides the government's consent to be sued. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012). The FTCA waives sovereign immunity under certain conditions "and provides the sole basis of recovery for tort claims against the United States." *Id.* (citing 28 U.S.C. §§ 1346, 2671, *et seq.*). Several exceptions, though, limit the waiver of sovereign immunity. Here, the Government contends, and the district court held, that the "discretionary function exception" applies.

The discretionary function exception applies to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28

No. 14-31303

U.S.C. § 2680(a).  The district court granted summary judgment because of this exception, concluding it lacked subject matter jurisdiction.

I.      *Standard of Review*

We review the district court's grant of summary judgment *de novo*. *Ashford v. United States*, 511 F.3d 501, 504 (5th Cir. 2007).  "Since the granting of summary judgment is a disposition on the merits of the case, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction."  *Stanley v. Cent. Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. Unit B Mar. 1981).  When there is no jurisdiction, the district court should dismiss the suit without prejudice so that the plaintiffs may pursue a claim in a court that has jurisdiction.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

We will review this judgment as a jurisdictional determination despite its label as a summary judgment.  We review *de novo* a district court's "construction of immunity" and we review the underlying factual findings for clear error.  *See In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 444 (5th Cir. 2012).

II.     *The Discretionary Function Exception*

We apply a two-part test to determine whether an agency's conduct qualifies as a discretionary function or duty.  *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991).[1]  First, we assess whether the challenged conduct was

---

[1] At the pleading stage, the plaintiff has the burden to "invoke the court's jurisdiction by alleging a claim that is facially outside of the discretionary function exception." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).  Nonetheless, we previously noted it is unclear whether the plaintiff or the government bears the ultimate burden of proving the discretionary function exception applies.  *See St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 n.3 (5th Cir. 2009).  Our sister circuits are split

"discretionary in nature, [an] act[] that involv[es] an element of judgment or choice." *Id.* at 322. If we find that the agency's conduct does qualify as discretionary, then we consider whether the actions taken are "susceptible to policy analysis." *Id.* at 325.

*A. Step One: Whether the challenged conduct was an act of discretion.*

"If a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010). In contrast, "the discretionary function exception does not apply if the challenged actions in fact violated a federal statute, regulation, or policy." *Id.* Gibson contends that FEMA had an unwritten "no assistance" policy that barred FEMA employees from helping customers enter and exit trailers, and that Johnson violated that policy by providing him an unsafe ladder.

The district court disagreed. First, the court held that whatever unwritten policy may have existed, the policy failed to prescribe sufficient "specific direction" to establish a nondiscretionary duty. The allegations of FEMA's supposed policy were "too broad and conclusory," the court held, and therefore the alleged FEMA conduct was not "specifically prescribed or prohibited" under the terms of the alleged policy. Second, the district court found that even if FEMA had a sufficient "no assistance" policy, Johnson did not violate that policy.

The district court relied on an unpublished Fifth Circuit case, *Lopez v. U.S. Immigration & Customs Enf't*, 455 F. App'x 427 (5th Cir. 2011). In *Lopez*,

---

on this question. *See id.* (collecting cases). This issue was not addressed by the district court or raised by the parties on appeal, and thus we leave it for another day.

No. 14-31303

a federal inmate died of a heart attack allegedly due to deficient prisoner medical care. *Id.* at 429–31. The inmate's estate sued certain federal employees under the FTCA. The district court held the discretionary function exception applied and dismissed all claims for lack of subject matter jurisdiction. *Id.* at 431. On appeal, the plaintiff argued the United States Marshal Service violated the nondiscretionary policies of conducting regular inspections of the prison facility and assuring adequate medical care was provided. *Id.* We affirmed the district court's ruling, in part by noting that when a "policy fails to prescribe 'specific direction' as to what course of action an employee must follow, it generally fails to establish a nondiscretionary duty." *Id.* at 433. While the policy seemed nondiscretionary, it did not define what specific level of compliance was required and what remedial action the Marshal Service should take if it discovered insufficient compliance. *Id.* We held the policy was mere "generalized, precatory, or aspirational language that [was] too general to prescribe a specific course of action for an agency or employee to follow." *Id.* (quoting *Freeman v. United States*, 556 F.3d 326, 338 (5th Cir. 2009)).

In the case before us, Herman Jones, a FEMA "logistics management specialist and sales lead," testified in a deposition that FEMA employees "were not supposed to assist the customers in and out of the trailers." Jones also testified that the policy effectively had a corollary, namely, that FEMA employees were allowed to provide a ladder if the customer requested one. On this record at least, the undisputed evidence is that the policy allowed a FEMA employee to provide a ladder but not assist a customer in using it. Whether the corollary allowed the FEMA employee to place the provided ladder in position at the trailer, which Gibson alleges the employee did, is not clear. The district court's decision that the policy had too little "specific direction" to establish a nondiscretionary duty was plausible.

We leave this first step in the analysis unresolved.  We find a clearer answer on the applicability of the discretionary function exception by examining whether this conduct was susceptible to policy analysis.  We conclude it was not, making the exception inapplicable.

*B. Step Two: Whether the challenged conduct is susceptible to policy analysis.*

"[E]ven assuming the challenged conduct involves an element of judgment, and does not violate a nondiscretionary duty, we must still decide whether the judgment is of the kind that the discretionary function exception was designed to shield."  *Spotts*, 613 F.3d at 568 (quotation marks omitted).  Specifically, the exception was enacted to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Katrina Canal Breaches*, 696 F.3d at 449.  "The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy."  *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988).  The exception only shields those acts that are "based on the purposes that the regulatory regime seeks to accomplish."  *Gaubert*, 499 U.S. at 325 n.7.  Our inquiry is "not whether the decision maker in fact engaged in a policy analysis when reaching his decision but instead whether his decision was susceptible to policy analysis."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La. Plaintiffs)*, 713 F.3d 807, 810 (5th Cir. 2013).

The district court determined that decisions about how FEMA would provide access were related to FEMA's purpose in offering the trailers for sale: "[P]racticality and costs are certainly policy considerations touching on these decisions," the court noted, and "the cost of rebuilding steps for all of the trailers would have seriously cut into the net price FEMA obtained from the

sale of these units." Further, FEMA's "no assistance" approach reduced costs and risks that a customer's fall could harm a FEMA employee. For the reasons that follow, we hold that FEMA's decision about how customers would enter and exit the trailers was not the type of judgment the discretionary function exception was designed to protect.

The Government's decisions about routine property maintenance, decisions with which any private landowner would be concerned, are not susceptible to the kind of policy analysis shielded by the discretionary function exception. *See Gotha v. United States*, 115 F.3d 176, 181–82 (3d Cir. 1997). Moreover, budgetary constraints on their own are often an insufficient policy goal to trigger the exception's protections. *See O'Toole v. United States*, 295 F.3d 1029, 1035–37 (9th Cir. 2002). These limits to the exception are particularly potent where the Government's actions are those of the operator of a business who is making the same decisions a private landowner would make. *See generally* 2 LESTER S. JAYSON & HON. ROBERT C. LONGSTRETH, HANDLING FEDERAL TORT CLAIMS § 9.10[4] (2015) (collecting cases).

The Third Circuit held that the discretionary function exception did not apply where an independent contractor sued the United States Navy after she fell on Navy property. *Gotha*, 115 F.3d at 178. The plaintiff Gotha was working at a Navy base that had two facilities separated by a steep incline. *Id.* While it was dark, Gotha was walking from the upper facility to the lower when she fell and suffered an ankle injury. *Id.* Gotha sued the United States under the FTCA, alleging negligence for the Government's failure to provide a stairway with handrails between the two facilities and failure to provide sufficient lighting. *Id.* The district court held the discretionary function exception barred Gotha's suit and dismissed the case. *Id.* In doing so, the district court relied on an affidavit submitted by the Government, claiming "[i]n evaluating a decision whether to install an outdoor staircase and artificial

lighting there are military, social and economic considerations involved." *Id.* at 181.

The Third Circuit reversed, explaining the "case [was] not about a national security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get." *Id.* Further, the court noted "[i]t is difficult to conceive of a case more likely to have been within the contemplation of Congress when it abrogated sovereign immunity than the one before us." *Id.* at 182. More recently, the Third Circuit has revised its holding in *Gotha*, concluding the discretionary function exception does not apply "where the Government is aware of a specific risk of harm, and eliminating the danger would not implicate policy but would involve only garden-variety remedial measures." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 340 (3d Cir. 2012).

Similarly, the Ninth Circuit held the discretionary function exception did not apply where ranch owners alleged the Bureau of Indian Affairs ("BIA") negligently maintained an irrigation system on government-owned property, damaging the ranch owners' land. *See O'Toole*, 295 F.3d 1029. The Government claimed "its failure to repair and maintain the . . . irrigation system was the result of a policy decision involving allocation of scarce BIA resources," and thus the discretionary function exception barred suit. *Id.* at 1032.

On appeal, the Ninth Circuit recognized a spectrum on which to assess the policy prong of the discretionary function exception. On one end, negligent driving by a government official does not implicate the kinds of policy considerations protected by the exception. *Id.* at 1035 (referencing a hypothetical first described in *Gaubert*, 499 U.S. at 325 n.7). On the other end of the spectrum are cases "where the government employee's exercise of

judgment is directly related to effectuating agency policy goals . . . . such as the regulation and oversight of [savings and loan associations] by the Federal Home Loan Bank Board, *see Gaubert*, 499 U.S. at 332–34; the release of vaccine lots by the Bureau of Biologics of the Food and Drug Administration, *see Berkovitz*, 486 U.S. at 545–48; and the enforcement and implementation of airline safety standards by the [FAA], *see Varig*, 467 U.S. at 814–20." *Id.* Turning to the facts of its own case, the *O'Toole* court held "that an agency's decision to forgo, for fiscal reasons, the routine maintenance of its property – maintenance that would be expected of any other landowner – is not the kind of policy decision that the discretionary function exception protects." *Id.* at 1036. In so holding, the court cautioned that "[t]he danger of the discretionary function exception . . . swallow[ing] the FTCA is especially great where the governments takes on the role of a private landowner." *Id.* at 1037.

The discretionary function exception is particularly inapt where the Government acts as the operator of a business. In many such cases, FTCA actions proceed without any stated consideration of the discretionary function exception at all. *See generally* JAYSON & LONGSTRETH, *supra*, § 9.10[4] (collecting cases). If the district court in this case reaches the merits, it will apply Louisiana law to determine whether the Government is liable. *See* 28 U.S.C. § 1346(b)(1). Louisiana law provides that an "owner or person having custody of immovable property has a duty to keep the property in a reasonably safe condition and must discover any unreasonably dangerous condition on the premises and either correct that condition or warn potential victims of its existence." *Daigle v. City of Shreveport*, 78 So. 3d 753, 765 (La. Ct. App. 2011) (interpreting LA. CIV. CODE ANN. art. 2315).

In one of our decisions applying Louisiana law, a plaintiff slipped and fell on a United States Post Office's icy steps; she sued the Government under the FTCA. *Salim v. United States*, 382 F.2d 240, 241–42 (5th Cir. 1967). We

recognized the Government was "causally negligent in failing to supply its employees with" a chemical capable of melting ice. *Id.* at 242–43. We considered an analogous case recently, in an unpublished decision. *Gourgeot v. United States*, 372 F. App'x 489 (5th Cir. 2010). There, again applying Louisiana law, we assessed an FTCA suit for a slip-and-fall that occurred outside a Post Office. *Id.* at 490. In both *Salim* and *Gourgeot*, FTCA claims were considered on their merits without any discussion of the discretionary function exception.

Rather differently, when the Government acts as landowner of wilderness, certain kinds of maintenance decisions have been found to contain multiple policy considerations. FEMA relies on several of these inapposite wilderness cases in an attempt to support its contention that sufficient policy considerations were present in this case. It refers us to a decision in which we considered how the United States Army Corps of Engineers was to notify the public of the existence of a sill (an underwater dam formed naturally from sediment) in the Mississippi River. *Theriot v. United States*, 245 F.3d 388 (5th Cir. 1998). We determined the Corps of Engineers' decision was subject to policy considerations. *Id.* at 399–400. Those considerations include "the degree of danger an object poses, the vessel traffic type and density, the location of the object in relation to the navigable channel, the history of vessel accidents, and the feasibility and economics, including costs, of erecting and maintaining physical markers in light of the available resources." *Id.* Likewise, in a recent unpublished decision, we held the Government's decision about how to replace warning signs near jetties in Galveston was a choice subject to policy considerations. *Hix v. U.S. Army Corps of Eng'rs*, 155 F. App'x 121, 127 (5th Cir. 2005). There, we noted the policy considerations underlying the Government's decision to replace warning signs, "ensuring public safety in the [surrounding] area . . . without encouraging public use of the jetties." *Id.*

12

No. 14-31303

at 127.   Unlike in *Theriot* and *Hix*, here, the Government operated as a commercial business and welcomed customers to its site as if it were managing a trailer showroom.

Also distinguishable is a case in which a vessel allided with a wharf in New Orleans, allegedly due to inadequate dredging of the river.  *MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. Bd. of Comm'rs of Port of New Orleans*, 636 F.3d 161, 163 (5th Cir. 2011).  The ship's owner sued, alleging that the Government had neglected its "statutory duty to dredge and maintain the Mississippi River as a navigable waterway."  *Id.*  On appeal, we analyzed the two-part test for application of the discretionary function exception.  *Id.* at 165–66.  For the second part of the test, we discussed the requirement that the relevant governmental decision must be "grounded in social, economic, or public policy."  *Id.* at 166 (citing *Gaubert*, 499 U.S. at 322–23).  If the Government is given discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* (quoting *Gaubert*, 499 U.S. at 324).  Overcoming the presumption requires a plaintiff to "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* (quoting *Gaubert*, 499 U.S. at 324–25).  We held that by statute, the Corps of Engineers was required to consider whether dredging projects were "economically justified or environmentally acceptable."  *Id.* at 167. Maintaining the navigability of the Mississippi River involve "quintessentially discretionary" judgments that were "susceptible to policy analysis." *Id.* at 168.

We find little in common between the judgments of maintaining thousands of miles of waterways and deciding how to allow customers access to trailers being offered for sale.  In *MS Tabea*, the Government conducted a complex policy analysis, balancing costs with environmental concerns.  Here,

the Government has only suggested FEMA would have more money for future projects by requiring customers to find their own way into the trailers.

In a helpful contrasting situation also involving FEMA, we recently dealt with FEMA's provision of emergency housing units that emitted formaldehyde. *See FEMA Trailer Formaldehyde (La. Plaintiffs)*, 713 F.3d 807. We noted FEMA's decisions to provide this housing were susceptible to policy analysis because the agency had to consider "what would provide the safest, most feasible, convenient, and readily available housing assistance." *Id.* at 810.

In contrast, FEMA's decision here to allow customers to fend for themselves in entering and exiting trailers did not require the kind of policy analysis relevant to the exception. FEMA operated this site in Baton Rouge like a commercial business. "The mere association of a decision with regulatory concerns is not enough; exempt decisions are those fraught with . . . public policy considerations." *Cope v. Scott*, 45 F.3d 445, 449 (D.C. Cir. 1995) (quotation marks omitted). The Government at times is to be treated as if it were a private landowner in assessing its exposure to common tort liability. *See Salim*, 382 F.2d at 241–42. This is one of those times.

We conclude the plaintiffs have overcome the presumption that this was a sufficiently policy-laden decision by alleging facts that show the conduct — how to provide customers invited onto the premises with reasonably safe access to the trailers — was not "grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 325. Instead, to use a sister circuit's descriptive list, the decision concerned "a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's [or here, FEMA's] mission as it is possible to get." *See Gotha*, 115 F.3d at 181.

The judgment is REVERSED and the cause is REMANDED for further proceedings.